# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# NORTHERN DIVISION

| | |
|---|---|
| **U.S. Equal Employment Opportunity Commission,** ) <br>     George H. Fallon Federal Building ) <br>     31 Hopkins Plaza, Suite 1432 ) <br>     Baltimore, MD 21201 ) <br> ) <br>         **Plaintiff,** ) <br> ) <br>         v. ) <br> ) <br> **Above All Odds, LLC** ) <br>     139 Carneliard CT, ) <br>     Pikesville, MD 21208 ) <br> ) <br>         **Defendant.** ) <br> ) | **Civil Action No.** <br><br><br><br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMAND** |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 ("Title VII") and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices and to provide appropriate relief to Charging Parties Bricciana Strickland ("Strickland"), Shanna Hanson ("Hanson") and Saidah Feyijinmi ("Feyijinmi") who were affected by such practices. As alleged with greater particularity below, Defendant Above All Odds, LLC (Above All Odds) subjected Strickland and Hanson to harassment because of their sex in violation of Title VII. Further, Defendant retaliated against Strickland, Hanson and Feyijinmi by demoting and/or terminating them for opposing the harassment.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this civil action under 28 U.S.C. §§ 451, 1331,

1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The employment practices alleged to be unlawful were and are being committed within the jurisdiction of the U.S. District Court for the District of Maryland, Northern Division.

## PARTIES

3.      Plaintiff U.S. Equal Employment Opportunity Commission ("EEOC") is the federal agency charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action under Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4.      At all relevant times Defendant Above All Odds LLC., a Maryland Limited Liability Company, has continuously been doing business in Baltimore City and Baltimore County, Maryland.

5.      At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of 701(b), (g) and (h) of Title VII, 42 U.S.C. § 2000e(b), (g) and (h).

6.      Hanson, Strickland, Feyijinmi and at least 13 other individuals were at all times employees of Defendant within the meaning of Sections 701(g) and (h) of Title VII, 42 U.S.C. § 2000e(g) and (h):

    a.      Defendant informed its workforce that they were employees and not independent contractors.

    b.      Defendant issued employees IRS Form W4 (Employees Withholding Certificate) and Maryland form MW507 (Maryland Withholding Exemption Certificate)

which directs Maryland employers to withhold Maryland state income tax from an employee's paycheck.

  c. Defendant required its workforce to sign a "Noncompetition and Nondisclosure Agreement" which referred to them as employees.

  d. Defendant had authority to hire and fire its workforce.

  e. Defendant had day-to-day supervision of its workforce including employee discipline.

  f. Defendant furnished its workforce with their equipment and place of work.

  g. Defendant provided its workforce with formal and informal training.

  h. Defendant's workforce performed duties that were part of the regular business of Defendant.

  i. Defendant set the hours of employment for its workforce.

  j. Defendant paid Hanson, Strickland and Feyijinmi an annual salary on a bimonthly basis.

  k. Hanson and Feyijinmi supervised Defendant's employees in their performance of Defendant's regular business.

## **ADMINISTRATIVE PROCEDURES**

7. More than thirty (30) days prior to the institution of this lawsuit, Charging Parties Hanson, Strickland and Feyijinmi filed Charges of Discrimination ("Charges") with the EEOC alleging violations of Title VII by Defendant.

8. Defendant received copies of the Charges and participated in EEOC's investigations, including by communicating with EEOC enforcement staff and responding to requests from EEOC for a position statement, information and documents.

9. On May 25, 2021, EEOC issued to Defendant three Letters of Determination

finding reasonable cause to believe that Defendant had violated Title VII with regard to Hanson, Strickland and Feyijinmi.

10. EEOC's Letters of Determination invited Defendant to join with EEOC in informal methods of conciliation to endeavor to eliminate the discrimination found to have occurred and provide appropriate relief.

11. EEOC engaged in communications with Defendant to provide it an opportunity to remedy the discriminatory practices described in the Letters of Determination on terms acceptable to the EEOC.

12. EEOC was unable to secure acceptable conciliation agreements from Defendant, and on July 26, 2021, EEOC issued to Defendant Notices of Failure of Conciliation.

13. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

14. At all relevant times, Defendant has owned and operated an outpatient mental health clinic in Baltimore City.

15. Raymond Dorsey, who is male, is the co-founder, Chief Operating Officer and co-owner of Defendant.

16. Dorsey is responsible for enforcing Respondent's policies, and oversees business development, day-to-day operations, recruitment and all issues related to revenue and earnings. Dorsey also directly supervised Hanson and Feyijinmi.

17. As Chief Operating Officer, Dorsey is a supervisor to Defendant's employees and is empowered by Defendant to take tangible employment actions concerning such employees, including, but not limited to, hiring, firing, promoting, disciplining, scheduling, setting compensation, assigning work duties and determining other significant terms and conditions of

employment.

### Bricciana Strickland

18.     Defendant hired Bricciana Strickland as a Direct Care Worker in its Psychiatric Rehabilitation Program ("PRP") in or around June 2019.

19.     Strickland's duties included ensuring that patients completed mandatory drug tests and attended required meetings for treatment.

20.     Strickland is female.

21.     At all relevant times, Chief Operating Officer Raymond Dorsey had authority to take tangible employment actions concerning Strickland, including hiring, firing, promoting, disciplining, scheduling, setting compensation, and assigning work duties.

22.     Beginning shortly after Strickland's hire, and continuing throughout her employment, Dorsey subjected her to unwelcome and offensive harassment because of her sex, including, but not limited to, the following:

   a.     Dorsey repeatedly sent Strickland text messages asking her for a date.

   b.     The text messages stated, among other things, "I want what I want[.] I usually get what I want[.]"

   c.     Strickland rejected Dorsey's advances stating that she did not date co-workers.

   d.     Dorsey sent a text stating that he could resolve her objection to dating co-workers by firing her from her position.

   e.     Strickland continued to reject Dorsey's advances.

   f.     In or around July 2019 Dorsey countered Strickland's rejection by subjecting her work to increased hostile and unnecessary scrutiny that he did not deliver to other employees and demoting her to work as administrator of its substance abuse program, a

5

position which paid $12,000 a year less than the position for which she was hired.

  g. Dorsey ordered the demotion with the intention that it would cause Strickland to resign and he conveyed this intention to Strickland's supervisor.

  h. Dorsey took a leave of absence in or around August and September 2019.

  i. Strickland did not resign in response to the demotion and when Dorsey returned to the office in September 2019, he subjected her to hostile and unnecessary scrutiny that he did not deliver to other employees.

  j. As a continuing consequence for Strickland rejecting his advances, in or around October 2019, Dorsey ordered Strickland's supervisor to fire her.

  k. Strickland's supervisor refused on the grounds that Strickland had not engaged in any behavior that would warrant termination.

  l. On or around October 25, 2019 Dorsey ordered two other members of the management staff to terminate Strickland over the objection of her direct supervisor. The managers complied and terminated Strickland.

### Shana Hanson

23. On or around August 5, 2019 Defendant hired Hanson as the Director of its Psychiatric Rehabilitation Program.

24. In that role, Hanson recruited and supervised direct care workers and managed client files.

25. At all relevant times Dorsey was Hanson's direct supervisor and had authority to take tangible employment actions concerning Hanson, including hiring, firing, promoting, disciplining, scheduling, setting compensation, and assigning work duties.

26. Hanson is female.

27. Beginning in or around September 2019, and continuing throughout her

employment, Defendant subjected her to unwelcome and offensive harassment because of her sex, and retaliation against her for engaging in protected activities including, but not limited to, the following:

    a.    Dorsey repeatedly made unwelcome sexual advances.

    b.    On one occasion Dorsey asked to give Hanson a back rub while winking at her suggestively.

    c.    On or around October 25, 2019 Dorsey sent Hanson an email with unwelcomed pornographic content.

    d.    In late 2019 Hanson did not attend a work holiday party. When she returned to the office following the holiday, Dorsey, who had continually been making unwelcomed sexual advances toward Hanson, forcefully grabbed her arm and demanded an explanation for her absence from the party.

    e.    In or around January 2020 Defendant renewed its contract with Hanson.

    f.    On or around late January 2020 Hanson was seated at her desk and Dorsey walked by and threw condoms in front of her.

    g.    The following workday Hanson and Saidah Feyijinmi, who had witnessed Dorsey throwing the condoms, reported Dorsey's harassment to Defendant's senior management.

    h.    Dorsey became aware of the report and on February 3, 2020 terminated Hanson for resisting his advances and for reporting his sexual harassment, notwithstanding the fact that her contract had been renewed approximately one month earlier.

### Saidah Feyijinmi

28.    Defendant hired Saidah Feyijinmi as a therapist on or around June 3, 2019.

29.    At the time she was hired Feyijinmi had not passed her state licensure exam and

could not work as a therapist, so Defendant gave her work performing administrative functions.

30. On or around July 15, 2019 Feyijinmi learned that she did not pass the state licensure exam. Defendant then hired her as office manager.

31. In or around September 2019 Feyijinmi assumed the position of Intake Specialist, in which she took clients' vitals and documented their information upon arrival at the clinic.

32. In or around December 2019, after Feyijinmi passed her licensure exam, she became a Rehabilitation Specialist. In that role, she assigned roughly 100 clients to the direct care workers under her supervision, monitored their activities with clients, and submitted claims to Medicaid for authorization.

33. Defendant retaliated against Feyijinmi for engaging in a protected activity including, but not limited to, the following:

    a. In or around late January 2020 Feyijinmi witnessed Dorsey throwing condoms on Hanson's desk.

    b. Feyijinmi reported Dorsey's sexual harassment to Defendant's senior management.

    c. She then received a text indicating that Turner Rascoe, Defendant's Chief Executive Officer, had been apprised of the situation.

    d. Later that day, LaRoyce Davis, Defendant's Human Resources Generalist, presented Feyijinmi with a new contract, which lowered her salary and required her to work two positions, Rehabilitation Specialist and therapist.

    e. Feyijinmi, as she had done in the past, requested time to review the contract over the weekend and ask questions the following week. Davis agreed to the arrangement.

    f. Less than two business days later, on or about Monday, February 3, 2020, Feyijinmi was called into a meeting with Davis. He informed Feyijinmi that she was being

terminated because she refused to sign her contract. Feyijinmi asked if she could have the opportunity to sign her contract, but Davis informed her that the directive to terminate her came from above him and there was nothing he could do.

### COUNT I: Hostile Work Environment Because of Sex

34. EEOC hereby repeats and incorporates by reference the allegations set forth in Paragraphs 14 through 33.

35. Since at least June 2019 and on a continuing basis thereafter, Defendant engaged in unlawful employment practices on the basis of sex in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a) by subjecting Strickland and Hanson to sexual harassment that created a hostile work environment.

36. The discriminatory practices described above were and are based on sex (female), unwelcome, and sufficiently severe or pervasive - both objectively and subjectively – to establish a hostile and offensive working environment and interfere with and alter the terms and conditions of employment. Defendant is liable for the harassing conduct of its Chief Operating Officer Raymond Dorsey.

37. The effect of the practices complained of above has been to deprive Strickland and Hanson of equal employment opportunities and to otherwise adversely affect their status as employees because of their sex.

38. The unlawful employment practices described above were and are intentional.

39. The unlawful employment practices described above were and are done with malice or reckless indifference to the federally protected rights of the aggrieved employees.

### COUNT II: Sex Harassment Resulting in Tangible Employment Action

40. EEOC hereby repeats and incorporates by reference the allegations set forth in Paragraphs 14 through 33.

41. Since at least June 2019 and on a continuing basis thereafter, Defendant engaged in unlawful employment practices on the basis of sex in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a) by subjecting Strickland and Hanson to harassment based on sex (female) that resulted in tangible employment actions, including with regard to compensation, demotion, job duties and assignments, discipline, discharge and other employment actions.

42. Defendant is liable for the harassing conduct of its Chief Operating Officer Raymond Dorsey.

43. The effect of the practices complained of above has been to deprive Strickland and Hanson of equal employment opportunities and to otherwise adversely affect their status as employees because of their sex.

44. The unlawful employment practices described above were and are intentional.

45. The unlawful employment practices described above were and are done with malice or reckless indifference to the federally protected rights of the aggrieved employees.

**COUNT III: Retaliation**

46. EEOC repeats and incorporates by reference the allegations set forth in Paragraphs 14 through 33.

47. Since at least February 2014, Defendant has engaged in unlawful employment practices in violation of Section 704(a)(l) of Title VII, 42 U.S.C. § 2000e-3(a)(l). These practices include demoting and terminating Strickland for opposing harassment and terminating Hanson and Feyijinmi for opposing harassment.

48. Defendant is liable for the retaliatory conduct of its Chief Operating Officer Raymond Dorsey.

49. The effect of the practices complained of above has been to deprive Feyijinmi and Hanson of equal employment opportunities and to otherwise adversely affect their status as

employees in retaliation for engaging in a protected activity.

50. The unlawful employment practices described above were and are intentional.

51. The unlawful employment practices described above were done with malice or reckless indifference to the federally protected rights of the aggrieved employees.

**PRAYER FOR RELIEF**

Wherefore, EEOC respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its owners, members, officers, agents, servants, employees, assigns, successors and all persons in active concert or participation with Defendant, from engaging in, or failing to take prompt, corrective action in response to, sex based harassment and other employment practices that discriminate based on sex or retaliate against employees for participating in activities protected by Title VII;

B. Order Defendant to take such employment actions and institute and carry out such policies, practices and programs necessary to provide equal employment opportunities, ensure Defendant's operations are free from sex-based harassment and discrimination, and eradicate and remedy the effects of Defendant's past and present unlawful employment practices;

C. Order Defendant to make whole Strickland, Hanson and Feyijinmi by providing compensation for past and future pecuniary losses, including backpay with prejudgment interest, resulting from the unlawfulemployment practices described above, in amounts to be determined at trial;

D. Order Defendant to make whole Strickland, Hanson and Feyijinmi by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices described above, including, but not limited to, emotional pain, suffering, embarrassment, degradation, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial;

E. Order Defendant to pay Strickland, Hanson and Feyijinmi punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial;

F. Grant such further relief as the Court deems necessary and proper in the public interest; and

G. Award EEOC its costs of this action.

## JURY TRIAL DEMAND

EEOC requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

GWENDOLYN YOUNG REAMS
Acting General Counsel

/S/ Debra M. Lawrence
DEBRA M. LAWRENCE
Regional Attorney, U.S. EEOC
GH Fallon Federal Bldg.
31 Hopkins Plaza, Ste. 1432
Baltimore, MD 21201
Phone: (410) 801-6691
Fax: (410) 209-2221
debra.lawrence@eeoc.gov
Dist. Md. Bar No. 04312

/s/ Maria Luisa Morocco (w/permission)
MARIA LUISA MOROCCO
Supervisory Trial Attorney, U.S. EEOC
Washington Field Office
131 M St., NE, 4th Floor
Washington, DC 20507
Phone: (202) 921-2766
Fax: (202) 419-0740
maria.morocco@eeoc.gov

/s/ Ashley Martin (w/permission)
ASHLEY MARTIN

Washington Field Office
131 M St., NE, 4th Floor
Washington, DC 20507
Phone: (202) 419-0724
Fax: (202) 419-0740
ashley.martin@eeoc.gov

/s/ Eric S. Thompson
ERIC S. THOMPSON
Trial Attorney, U.S. EEOC
Baltimore Field Office
George H. Fallon Federal Building
31 Hopkins Plaza, Suite 1432
Baltimore, MD  21201
Phone: 410.801.6696
Eric.Thompson@EEOC.GOV