IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No.:  21-cv-02492-RDB |
| v. | ) ) | |
| ABOVE ALL ODDS, LLC | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF EEOC'S
MOTION FOR DEFAULT JUDGMENT**

Table of Contents

I.    **Introduction**                                                                1

II.   **PROCEDURAL POSTURE**                                                          1

III.  **PLEADINGS AND FURTHER SUPPORTING FACTS**                                      2

IV.   **ARGUMENT**                                                                    7

      A.    **Default Judgement Against Above All Odds in Warranted**                 7

      B.    **Defendant Violated Title VII**                                          8

            1.    **Defendant is Covered under Title VII**                            8

                  a.    Strickland and Feyijinmi were employees Defendant            8

                  b.    Defendant had more than 15 employees                         9

            2.    **Dorsey, an Officer of AAO, Sexually Harassed Strickland in
                  Violation of Title VII**                                           9

            3.    **Defendant Violated Title VII by Retaliating Against
                  Feyijinmi and Strickland, for Engaging in the Protected
                  Activity of Opposing Sexual Harassment**                           11

      C.    **Strickland and Feyijinmi are Entitled to Relief for Defendant's
            Violations of Title VII**                                                13

            1.    **An Award of Backpay with Prejudgment Interest is
                  Warranted for Strickland and Feyijinmi**                           13

                  a.    Feyijinmi's Net Lost Wages and Interests                     16

                  b.    Strickland's Net Lost Wages and Interest                     19

            2.    **Compensatory Damages**                                           20

                  a.    Feyijimni is Owed $50,000 in Compensatory Damages            20

                  b.    Strickland is Owed $50,000 in Compensatory Damages           21

            3.    **Punitive Damages**                                               22

    **4.**    **Post-Judgement Interest**     24

**V.**    **CONCLUSION**     24

## I.      Introduction

Pursuant to Federal Rule of Civil Procedure 55(b), Equal Employment Opportunity Commission (EEOC) submits this Memorandum in support of its Motion for Default Judgment against Defendant Above All Odds, Inc. (Defendant or AAO). Default judgment is appropriate because Defendant has failed to plead or otherwise defend against EEOC's Complaint. The Clerk of Court has made an entry of Default for want of answer or other defense pursuant to Rule 55(a). (ECF No. 11). EEOC now moves this Court to grant default judgment under Rule 55(b)(2).

## II.  Procedural Posture

This is an action under Title VII of the Civil Rights Act of 1964 ("Title VII") and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices and to provide appropriate relief to Charging Parties Bricciana Strickland ("Strickland") and Saidah Feyijinmi ("Feyijinmi") who were affected by such practices.[1] In its Complaint, EEOC alleges Defendant discriminated against Strickland by subjecting her to sexual harassment, and retaliated against Strickland and Feyijinmi for opposing sexual harassment.

On September 29, 2021, EEOC filed its Complaint against Defendant (ECF No. 1), a privately-owned business headquartered in Baltimore County, Maryland with offices in Baltimore City, Maryland. *Id.* at ¶ 4. On November 15, 2021, after failed attempts to obtain a waiver of service of summons, the Clerk issued Summons at the request of EEOC. ECF No. 6. On December 3, 2021, EEOC effected service of the Summons and Complaint on Defendant through the Maryland State Department of Assessment and Taxation (SDAT). ECF No. 7

---

[1] EEOC also sought relief for Shanna Hanson but the Commission has been unable to secure her cooperation in preparing this motion and is consequently unable to present a claim for relief on her behalf.

(Summons Returned Executed and Affidavit of Service). Defendant has not filed an answer or other response.

On January 25, 2022, the Clerk entered default and advised Defendant that it had 30 days to file a motion to vacate the default. ECF Nos. 11 (Order of Default) & 12 (Notice). Defendant was warned that failure to act within the 30 days could result in a monetary judgment against it. ECF No. 12. On March 1, 2022 the Court issued an order to show cause within 15 days as to why a default should not be ordered against it and EEOC served the order on Defendant. ECF No. 13 (Show cause order) & ECF No. 14 (Notice of Service). Defendant failed to defend against the default.

### III.    Pleadings and Further Supporting Facts

Defendant AAO is an outpatient mental health clinic which operates a Psychiatric Rehabilitation Program (PRP) in Baltimore City. Complaint ECF No. 1 (Complaint) at ¶ 14; Exhibit 1 Declaration of Saidah Feyijinmi (Feyijinmi decl.) at ¶ 6. A significant portion of the services provided by PRP practices are performed by direct care workers who are not licensed therapists but who provide mentoring, support, guidance and practical advice. *Id*. at ¶ 7. AAO bills a significant amount of its work to Medicaid. *Id*. at ¶ 8.

Raymond Dorsey is the co-founder, Chief Operating Officer and co-owner of AAO. Feyijinmi decl. at ¶ 22a-g; Complaint at ¶¶ 15-17. He held himself out as the owner of the company and the person responsible for making all decisions and that the Chief Executive Officer merely signed things on his behalf. Feyijinmi decl. at ¶ 22d-e. AAO's managers were mostly Dorsey's friends. Feyijinmi decl. at ¶ 22f. For instance, LaRoyce Davis, the Human Resources Manager, was a friend of Dorsey's who had no prior experience with Human Resources. *Id.*

Charging Party Saidah Feyijinmi started work for Defendant on June 3, 2019. Feyijinmi decl. at ¶ 10; Complaint at ¶ 28. She had just earned her master's degree in Social Work and was eager to start her career. Feyijinmi decl. at ¶ 9. When she began work she had not yet received her license. Complaint at ¶ 29. She was given the title of Therapist, but she performed administrative tasks such as preparing for audits. Feyijinmi decl. at ¶ 11. Her starting salary was $65,000 per year paid bimonthly.[2] Feyijinmi decl. at ¶ 12.

Charging Party Bricciana Strickland started working at AAO as a Direct Care Worker on June 17, 2019. Exhibit 2, Declaration of Bricciana Strickland (Strickland Decl). at ¶ 3; Complaint at ¶ 18. Strickland was supervised by Feyijinmi and another manager who assigned her adolescent clients who were participating in the PRP. Strickland decl. at ¶ 4-5. Her role was to ensure that clients completed mandatory drug tests and attended required meetings for treatment. Strickland decl. at ¶ 5; Complaint at 19. Within two weeks Strickland had mastered all the tasks she was required to perform. Feyijinmi decl. at ¶ 24b. Her salary was $50,000 a year, paid bimonthly. Strickland decl. at ¶ 10.

During the first two weeks that she worked at AAO, Strickland went out to lunch with Dorsey, who supervised Feyijinmi, Strickland's supervisor. Strickland decl. at ¶ 12. After their lunch, he began pressuring her to go on a date with him. Strickland decl. at ¶ 13-14; Complaint at ¶ 22a-b. When Strickland rejected his advances, he texted "I want what I want. I usually get it. So you know the answer you gave me didn't settle with me." Strickland decl. at ¶ 13-14 & Ex. B. When Strickland advised him that she did not date co-workers he threatened to fire her to make dating possible. Strickland decl. at ¶ 16 & Ex. B; Complaint at ¶ 22d. Dorsey's texts

---

[2] On or around July 15, 2019 Feyijinmi learned that did not pass her licensure exam and she negotiated a lower salary of $52,000 a year. Feyijinmi decl. at ¶ 13; Complaint at ¶ 30. In December 2019 when she passed the exam, she was promoted to Psychiatric Rehabilitation Specialist and her salary was restored to $65,000 a year paid bimonthly. Feyijinmi decl. at ¶ 15.

intimidated Strickland and made her feel uncomfortable. Strickland decl. at ¶ 15. She did not go on a date with Dorsey. Strickland decl. at ¶ 17.

Two weeks after Strickland rejected Dorsey, he asked Feyijinmi to fire her. Feyijinmi Decl. at 24a-b; Complaint at 22f. Feyijinmi opposed this because she was performing well. Feyijinmi decl. at ¶ 24b-c. Dorsey then ordered Feyijinmi to demote Strickland and cut her salary to $38,000 a year. Feyijinmi decl. at ¶ 24d; Strickland decl. at ¶ 18; Complaint at ¶ 22f. Dorsey told Feyijinmi that the purpose of the demotion was to force Strickland to resign. Feyijinmi decl. at 24d; Complaint at ¶ 22g. Strickland did not resign. Complaint at ¶ 22i.

Around August and September 2019 Dorsey took a leave of absence. Complaint at ¶ 22h. When he returned, he ordered Feyijinmi to write Strickland up for being late. Feyijinmi decl. at ¶ 24e; Complaint at ¶ 22i. Feyijinmi opposed writing Strickland up for tardiness because numerous other employees had worse tardiness without consequence. Feyijinmi at ¶ 24f. Dorsey issued the discipline over Feyijinmi's objection. Strickland decl. at ¶ 20. To avoid being late again Strickland moved from Washington DC to Baltimore to be closer to AAO's offices. Feyijinmi decl. at ¶ 24 g; Strickland decl. at ¶ 21. After the move, Strickland was no longer late. Feyijinmi decl. at ¶ 24h; Strickland decl. at ¶ 21. Less than two weeks after Strickland moved to Baltimore, Dorsey again ordered Feyijinmi to fire Strickland. Feyijinmi decl. at ¶ 24i. Feyijinmi refused because the issue with tardiness had resolved and Strickland was well liked by clients. Feyijinmi decl. at ¶ 24j; Complaint at ¶ 22k. When Feyijinmi refused, Dorsey had other supervisors fire Strickland on October 25, 2019. Feyijinmi decl. at ¶ 24k; Complaint at ¶ 22l; Strickland decl. at ¶ 22. Strickland was unable to find work with comparable pay until March 2020. Strickland decl. at ¶ 28.

Shanna Hanson also worked for Defendant with Strickland and Feyijinmi. Feyijinmi at decl. at ¶ 17; Strickland decl. at ¶ 11; Complaint at ¶ 23. Hanson worked in the back office and made sure the practice functioned. Strickland at ¶ 11. She had the most knowledge regarding Medicaid. Feyijinmi decl. at ¶ 18. Beginning in September 2019 Dorsey began pressuring Hanson to date him. Complaint at ¶ 27. In January 2020 Feyijinmi saw Dorsey walk past Hanson and throw condoms on her desk in front of her. Feyijinmi decl. at ¶ 25a; Complaint 27f-g, 33a. Feyijinmi reported the matter to Dr. Oriwa, a senior manager at AAO, who said that she would report it  to Chief Executive Officer Turner Rascoe. Feyijinmi at ¶ 25a. Later that day Human Resources Manager LaRoyce Davis presented Feyijinmi with a contract that required her to work two positions and did not provide her with the supervision she needed to comply with her licensure requirements. Feyijinmi decl. at ¶ 25c-d. She asked for a few days to review the contract and Davis agreed. Feyijinmi decl. at ¶ 25e. Two days later Davis terminated her. *Id.* at ¶ 25f. He stated that it was because she refused to sign the contract. Feyijinmi at ¶ 25f. Feyijinmi pleaded that she would now sign the contract, but Davis told her that the directive had come from above and the termination would move forward. *Id.* AAO terminated Feyijinmi on February 3, 2020. Complaint at ¶ 33f. She has not been able to find work with pay comparable to what she made at AAO.

Strickland and Feyijinmi searched for work online and in person. Strickland looked for work through Indeed.com, through online searches, and through word-of mouth. Strickland decl. at ¶ 27. In March 2020 she found work with pay equal to what she made at AAO. *Id.* at ¶ 29. Feyijinmi looked for work through Indeed.com and LinkedIn and by posting an add on Psychology Today. Feyijinmi decl. at ¶ 27b. She continues to look for work through these sources. *Id.* at ¶ 27c. In June 2020 she found work as an independent contractor performing

therapy at Mighty Behavioral. Feyijinmi decl. at 28a-b. There, she must recruit her own clients and is paid $40 per each session. *Id.* Insurance, advertising, and her Zoom account are not paid for by Mighty Behavioral and she must assume these expenses on her own. Feyijinmi decl. at 28c-d (detailing expenses). Her income through Mighty Behavioral is less than what she earned at AAO. Feyijinmi decl. at 28e-g (detailing earnings). She continues to look for other employment. *Id.* at ¶ 27c.

In addition to their financial losses, Strickland and Feyijinmi suffered emotional distress. Strickland began struggling with anger since the time Dorsey pressured her for a date and threatened to fire her. Strickland decl. at ¶ 26. Dorsey's pressure to date him coupled with the unprovoked termination caused depression, fear and frustration. Strickland decl. at ¶ 24. Joblessness caused additional anxiety. Strickland decl. at ¶ 25. For the first six months without work, Strickland had great difficulty sleeping. Strickland decl. at ¶ 25.

Feyijinmi's termination put her in danger of losing her home. Feyijinmi decl. at ¶ 26e. She was also concerned about the ramifications to her career resulting from having been terminated from her first job as a social worker. *Id.* at ¶ 26c. She went through periods where she would have long crying spells and lock herself in the bathroom at home. *Id*. at ¶ 26f. The emotional distress reached a point where her hair was falling out and her skin began blistering. *Id*. at ¶ 26h. These symptoms led her to seek treatment with a counselor, *Id.,* who diagnosed her with post-traumatic stress disorder, general anxiety disorder, and major depressive disorder stemming from her termination by Defendant. Feyijinmi decl. at 26i & Exhibit D. The therapy provided some relief but Feyijinmi continues to be mistrustful of male supervisors. *Id.* at 26j & Exhibit D.

Defendant has not filed any responsive pleading or otherwise contested these facts.

## IV.  ARGUMENT

### A.     Default Judgment Against Above All Odds is Warranted

EEOC is entitled to default judgment under Rule 55(b)(2) because Defendant has failed

to file an answer or otherwise defend against the lawsuit and EEOC obtained an entry of default

before filing this Motion. Rule 55 requires a two-step process for obtaining default judgment: (1)

entry of default under 55(a) where Defendant "failed to plead or otherwise defend;" and (2) entry

of default judgment under 55(b). Fed. R. Civ. P. 55(a)-(b); *see Fidrych v. Marriott Int'l, Inc.*, 952

F.3d 124, 130 (4th Cir. 2020) (discussing two-step process for obtaining default judgment). Here,

pursuant to Rule 55(a), EEOC obtained an order of default for Defendant's failure to answer or

otherwise defend through counsel. ECF No. 11. Additionally, Defendant has failed to defend

against the Order to Show Cause issued on March 1, 2022. ECF No. 13.

Because of the entry of default, all well-pled allegations in the Complaint as to liability

under Title VII are deemed admitted by Defendant. *Ryan v. Homecomings Fin. Network*, 253

F.3d 778, 780 (4th Cir. 2001) ("The defendant, by his default, admits the plaintiff's well pleaded

allegations of fact, …") (internal quotation marks and citations omitted); *SEC v. Lawbaugh*, 359

F. Supp. 2d 418, 422 (D. Md. 2005) ("Upon default, the well-pled allegations in a complaint as

to liability are taken as true, ..."). Accordingly, the allegations in EEOC's Complaint are

admitted as evidence of sexual harassment and retaliation.

The allegations in EEOC's Complaint, taken as true, establish that Defendant violated

Title VII and, therefore, EEOC is entitled to recover damages. Once the default judgment is

established the court must assess damages. *Ryan,* 253 F.3d at 780. In addition to compensatory

and punitive damages, EEOC also seeks backpay for Feyijinmi and Strickland. The following

discussion demonstrates that EEOC has established liability under Title VII and is entitled to the relief sought in its Complaint.

**B.      Defendant Violated Title VII**

EEOC's well-pled allegations in its Complaint establish that Defendant violated Title VII and that EEOC is entitled to the relief requested. The allegations in the Complaint, particularly when combined with the declarations of Feyijinmi and Strickland and the related exhibits, demonstrate that Dorsey, an officer and owner of AAO, sexually harassed Strickland and terminated her and Feyijinmi for opposing sexual harassment.

1.      Defendant is Covered under Title VII

a.      Strickland and Feyijinmi were employees of Defendant

To evade Title VII coverage, which excludes independent contractors, throughout the investigation, Defendant argued that Strickland and Feyijinmi were independent contractors and not employees. Defendant relied on the IRS 1099 forms it issued to Strickland and Feyijinmi, but tax documents alone do not determine employee status. The three most important inquiries are whether the defendant exercised significant control over the plaintiff's hiring, firing, or working conditions. *Russell v. BSN Med., Inc.*, 721 F. Supp. 2d 465, 474 (W.D.N.C. 2010) (quoting *JustMed, Inc. v. Byce,* 600 F.3d 1118, 1128 (9th Cir. 2010)) (citing *Chapman v. Duke Energy Carolinas, LLC*, 2010 WL 411141, at *3 (W.D.N.C. Jan. 28, 2010) (citing *Paroline v. Unisys Corp.,* 879 F.2d 100, 104 (4th Cir. 1989), *aff'd in part,* 900 F.2d 27 (1990) (per curiam))). "Where the tax and benefits factors are the only strong factors indicating independence, '[t]here is a danger ... in relying on them too heavily, because they do not bear directly on the substance of the employment relationship—the right to control.'" *Id.*

AAO exercised complete control over Strickland and Feyijinmi's working conditions. Complaint at ¶ 6a-k. AAO issued its workforce a set of employment policies that included a dress code. Feyijinmi decl. at ¶ 19a & Exhibit A. It set their hours of employment and required them to formally request time off. *Id.* at ¶ 19d. When Strickland was late for work Dorsey ordered Feyijinmi to discipline her. *Id.* at 24d. Strickland and Feyijinmi were also issued non-compete agreements which described them as employees. Feyijinmi decl. at ¶ 19c & Ex. B; Strickland decl. at ¶ 9 and Exhibit A.

Further, "regular, periodic payments' provide indicia of employee status." *Russell supra,* at 474 (quoting *Farlow v. Wachovia Bank of North Carolina, N.A.,* 259 F.3d 309, 315 (4th Cir. 2001). Here, Defendant paid Strickland and Feyijinmi a fixed salary on a bimonthly basis. Feyijinmi decl. at ¶ 12; Strickland decl. at ¶ 10. The fixed salary strongly indicates that Strickland and Feyijinmi maintained employee status, as does Defendant assigning various positions to them, including through demotion.

b.      Defendant had more than 15 employees.

To be covered under Title VII an employer must have at least 15 employees. 42 U.S.C. 2000e(b). Feyijinmi estimates the number of employees at 30. Feyijinmi at ¶ 21b. When interviewed during the EEOC's investigation of this matter Dorsey stated that AAO had 14-18 employees. Exhibit 3 Declaration of EEOC investigator James Swan at Exhibit A. Because, as demonstrated above, Strickland and Feyijinmi were misclassified as independent contractors, the actual employee count is therefore at least 16.

2.      <u>Dorsey, an Officer of AAO, Sexually Harassed Strickland in Violation of Title VII</u>

AAO violated Title VII because Dorsey, the COO, engaged in *quid pro quo* sexual harassment against Strickland. To make out a case for *quid pro quo* sexual harassment, a

"plaintiff must show five elements: membership in a protected group; unwelcome sexual harassment; harassment based on sex; that her reaction to the harassment affected 'tangible aspects of the employee's compensation, terms, conditions, or privileges of employment;' and that the employer knew or should have known of the harassment but took no remedial action." *Okoli v. City of Baltimore,* 648 F.3d 216, 222 (4th Cir.2011) (internal citations omitted). All five elements are present here.

The first and second elements are met as Strickland is female and Dorsey's advances were not welcomed. Complaint at ¶ 20. "Advances are unwelcome if the plaintiff regarded them as undesirable or offensive and did not solicit or incite them." *Briggs v. Waters*, 484 F. Supp. 2d 466, 478 (E.D. Va. 2007) (citing *Lewis v. Forest Pharm., Inc.,* 217 F.Supp.2d 638, 647 (D.Md.2002)). "The plaintiff's response to the advances provides evidence of unwelcomeness." *Id.* Here, Strickland rejected Dorsey. Strickland decl. at ¶ 17.

A plaintiff may prove the third element by demonstrating that the harasser made a sexual advance toward the victim. *Briggs supra* at 478. To establish the existence of a sexual advance, a plaintiff need not show that an explicit request for sex was made. *Id.* (citing *Lewis supra* at 647). Dorsey's requests for a date constitute a sexual advance. *Briggs supra* at 478 (citing *Early v. Morris Newspaper Corp.,* 54 F.Supp.2d 1261, 1268 (M.D. Ala. 1999) (concluding that a request for a date qualified as a sexual advance because a reasonable juror could construe it as such)). Dorsey's text messages convey thinly veiled sexual desire. He texted "I want what I want[.] I usually get what I want[.]" Strickland decl. at ¶ 13-14 & Exhibit B. The intensity of his interest belies any claim that he sought a casual night out. Further, in response to the EEOC investigator's query, Dorsey denied requesting Strickland for a date.

Swan decl. at Exhibit A.[3] Had his intentions not been sexual there would be no need to conceal the fact that he had asked Strickland for a date.

In order to demonstrate the fourth element, the existence of a tangible employment action, the employee must demonstrate "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Okoli*, *supra* 648 F.3d at 222. Strickland was demoted and terminated despite excellent performance. Feyijinmi at ¶ 24a-l.

The fifth element is automatically met when the harassment was alleged to have been perpetrated by a high-level officer or director. *See EEOC v. Xerxes Corp.,* 639 F.3d 658, 678 (4th Cir. 2011)(Motz, J., concurring) (harassment by employer's proxy "would certainly be imputable to the employer"). Dorsey is not just a supervisor, but an officer, and he further indicated to Feyijinmi and others that he had complete control over the organization. Feyijinmi decl. at ¶ 22a-e. Further, it was Dorsey who gave the order to fire Strickland. *Id.* at ¶ 24k. Thus, the pleadings and supporting declarations establish a violation of Title VII.

3.      Defendant Violated Title VII by Retaliating Against Feyijinmi and Strickland, for Engaging in the Protected Activity of Opposing Sexual Harassment

Feyijinmi and Strickland were subjected to adverse actions in retaliation for their protected activity. To establish a *prima facie* case of retaliation under Title VII, a plaintiff must demonstrate that "(1) she engaged in a protected activity …; (2) the employer acted adversely against her; and (3) the protected activity was causally related to the employer's adverse action." *Testerman v. Procter & Gamble Mfg. Co.,* 2015 WL 5719657, at *7 (D. Md. Sept. 29, 2015)

---

[3] In his statement to EEOC Dorsey indicated that Feyijinmi and Strickland were fired for performance issues. These statements are not credible because, as demonstrated by the text messages to Strickland, Dorsey lied about asking her on a date. EEOC has offered Dorsey's statement as an admission by party opponent pursuant to Fed R. Evid. 801(d)(2).

(citing *Okoli* 648 F.3d at 223). Feyijinmi was terminated for reporting Dorsey's sexual harassment and Strickland was fired for resisting his attempts at harassment.

Feyijinmi witnessed Dorsey throw condoms down on Hanson's desk in front of her and immediately reported it. Complaint at ¶ 33a-c; Feyijinmi decl. ¶ 25a-b. Courts in the Fourth Circuit have held that complaining about harassment is a protected activity. *Strothers v. City of Laurel, Md.,* 118 F. Supp. 3d 852, 865 (D. Md. 2015) (citing *Burgess v. Bowen,* 466 Fed. Appx. 272, 282–83 (4th Cir. 2012)).

Relatedly, telling a harasser to stop the harassment is a protected activity. *Owen v. Cty. of Franklin, Virginia*, 358 F. Supp. 3d 545, 551 (W.D. Va. 2019) (citing *EEOC v. New Breed Logistics*, 783 F.3d 1057, 1067 (6th Cir. 2015) ("If an employee demands that his/her supervisor stop engaging in this unlawful practice—i.e., resists or confronts the supervisor's unlawful harassment—the opposition clause's broad language confers protection to this conduct.")). Strickland opposed Dorsey's advances and who did not take "no" lightly. He texted "I want what I want. I usually get it. So you know the answer you gave me didn't settle with me." Strickland decl. at ¶ 13-14 & Ex. B.

The plaintiff must also demonstrate that she was subject to an adverse employment action. "[D]ischarge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion' constitute adverse actions." *Ryan v. Wolf*, No. CV ELH-19-1968, 2021 WL 409747, at *18 (D. Md. Feb. 5, 2021) (citing *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999)). Strickland was demoted, then terminated, and Feyijinmi was terminated. Complaint at ¶¶ 22f-l; 33f.

The final element, causation, can be established by the timing of the termination. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 575 (4th Cir. 2015) (citing *Haulbrook v.*

*Michelin N. Am., Inc.,* 252 F.3d 696, 706 (4th Cir. 2001) (finding that temporal proximity alone is evidence of causation). Feyijinmi was given a contract that doubled her work the same day she reported Dorsey's harassment. Feyijinmi decl. at ¶ 25b-f. She was then summarily fired notwithstanding her desire to sign the contract. *Id.* Strickland was demoted two weeks after rejecting Dorsey, even though she was performing well. *Id.* at 24a-l¶. Two weeks is within sufficient proximity to infer causation. *See Jacobs supra* 780 F.3d at 575 (three weeks); *Pickering v. Virginia State Police*, 59 F. Supp. 3d 742, 748 (E.D. Va. 2014) (six weeks). Further, Dorsey stated that the purpose of the demotion was to force Strickland to resign. (Feyijinmi decl. at ¶ 24d). Dorsey ultimately prevailed and Strickland was terminated without cause October 25, 2019. Complaint at ¶22l.  Thus, there is a clear chain of causation between the protected activity and the subsequent termination. For these reasons, a default judgment in favor of EEOC on its claims for retaliation are warranted.

## C.  Strickland and Feyijinmi are Entitled to Relief for Defendant's Violations of Title VII

Having established liability through Defendant's default, EEOC now seeks monetary relief that includes backpay, pre-judgment interest on backpay, compensatory damages, and post judgment interest.

### 1.  <u>An Award of Backpay with Prejudgment Interest is Warranted for Strickland and Feyijinmi</u>

Plaintiff's Complaint sets forth a claim for backpay with prejudgment interest. ECF No. 1, Prayer for Relief at ¶ C. The plaintiff in a Title VII case is generally entitled to backpay "as a matter of course." *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 420 (1975). The purpose of Title VII is to combat discrimination and "to make persons whole for injuries suffered on account of unlawful employment discrimination." *Id.* at 417-18. Backpay is an equitable remedy

and it is "the historic purpose of equity to secur[e] complete justice." *Id.* at 418 (internal citations omitted). The provisions of Title VII "are intended to give the courts wide discretion exercising their equitable powers to fashion the most complete relief possible." *Id.* at 421 (citing 118 Cong. Rec. 7168 (1972)). "[B]ack pay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." *Albemarle supra*, 422 U.S. at 421. The backpay period begins at the time of termination and may extend to the time of judgment. *EEOC v. MSDS Consultant Servs., LLC*, No. 8:18-CV-02917-PX, 2021 WL 6074204, at *2 (D. Md. Dec. 22, 2021) (citing *Patterson v. Am. Tobacco Co.*, 535 F.2d 257, 269 (4th Cir. 1976) (backpay may be awarded "for a period commencing at the time the employee was unlawfully denied a position until the date of judgment.")).

Backpay amounts are calculated by totaling lost wages and benefits from the job that was lost and then deducting any amounts that the claimants earned from subsequent employment or amounts that could have been earned in the exercise of reasonable diligence.[4] 42 U.S.C. §2000e-5(g)(1). "In awarding backpay damages, exactitude is not required" and the Court may rely on the testimony of the Plaintiff. *EEOC v. Ecology Servs., Inc.*, 447 F. Supp. 3d 420, 447 (D. Md. 2020) (quoting *Hairston v. McLean Trucking Co.*, 520 F. 2d 226, 233 (4th Cir. 1975); *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 156 (3d Cir. 1999) ("[U]ncertainties [in the calculation of backpay] are resolved against a discriminating employer")).

---

[4] Failure to exercise reasonable diligence to mitigate backpay losses is an affirmative defense for which the defendant-employer bears the burden of persuasion. See, e.g., *Martin v. Cavalier Hotel* Corp., 48 F.3d 1343, 1358 (4th Cir. 1995); *Brady v. Thurston Motor Lines, Inc.*, 753 F.2d 1269, 1273-1274 (4th Cir. 1985).

Further, there is a strong presumption in favor of awarding prejudgment interest on the backpay award. *Booker v. Taylor Milk Co.*, 64 F.3d 860, 868 (3d Cir. 1995); *Maksymchuk v. Frank*, 987 F.2d 1072, 1077 (4th Cir. 1993) (citing *Clarke v. Frank,* 960 F.2d 1146, 1153–54 (2d Cir.1992) ("[W]e have held that 'it is ordinarily an abuse of discretion *not* to include pre-judgment interest in a back-pay award....' " (citation omitted)). "The essential rationale for awarding prejudgment interest is to ensure that an injured party is fully compensated for its loss." *MSDS Consulting Severs, supra* at *5 (citing *Feldman's Med. Ctr. Pharm. Inc. v. CareFirst, Inc.*, 823 F. Supp. 2d 307, 324 (D. Md. 2011) (internal citations omitted)).

"Prejudgment interest is viewed as a form of compensatory damage to designed to place the plaintiff in the same position as if no violation had occurred." *Feldman's Med. Ctr. Pharm. supra* at 324. It is therefore essential that the interest be compounded quarterly at the IRS underpayment rate. *See EEOC v. FLC & Bros. Rebel*, 663 F. Supp. 864, 869 (W.D. Va. 1987) (collecting cases), *aff'd,* 846 F.2d 70 (4th Cir. 1988); *EEOC v. Guardian Pools, Inc.*, 828 F.2d 1507, 1512-1513 (11th Cir. 1987) (and cases cited therein).

Prejudgment interest can be accurately calculated using PayCalc, a commercially available software used by many EEO professionals, including EEOC attorneys, to calculate backpay with interest. *See EEOSTAT for EEO COMPLIANCE*, https://www.eeostat.com/ (last visited April 19, 2022). PayCalc calculates the amounts of backpay and interest due to an aggrieved individual when the user projects  the wages an individual should have earned and offsets it with the pay she did, in fact, earn. *See EEOSTAT for EEO COMPLIANCE: paycalc*, https://www.eeostat.com/paycalc/ (last visited April 19, 2022). Interest is compounded, quarterly, at interest rates established by the IRS for calculating interest on unpaid taxes. *See*

*Id.*; 26 U.S.C. § 6621. The IRS interest rates applied by the EEOC in this case are those set forth in Table A:

**Table A IRS Interest Rates**

| IRS INTEREST RATES | | |
|---|---|---|
| START DATE | END DATE | INTEREST RATE |
| 04/2022 | 06/2022 | 0.04 |
| 07/2020 | 03/2022 | 0.03 |
| 07/2019 | 06/2020 | 0.05 |

a.      Feyijinmi's Net Lost Wages and Interest

Feyijinmi earned $65,000 per year working for Defendant. Feyijinmi decl. at ¶ 28h. This is equivalent to $16,250 per quarter and $5,416.67 per month. *Id*. Immediately after she was terminated, she started looking for work. *Id*. at ¶ 27a-b. The job search included looking for work online and by posting an add on Psychology Today. *Id.* at 27b. She also looked for work through LinkedIn and Indeed. *Id.* At the time of her search the pandemic had just begun and many employers were not hiring. *Id.* at ¶ 27d. Consequently, she was without work from February through May 2020. *Id.* at ¶ 27e.

In June 2020 she found work as a therapist working as an independent contractor, but it continues to pay less than her position at AAO. *Id.* at ¶ 28. She earns only $40 for each therapy session and is required to pay for her own insurance and advertising as well as the Zoom account she needs for teletherapy. *See* Feyijinmi decl. at ¶ 28c-d (detailing expenses). Feyijinmi continues to look for other work. *Id.* at 27c.

**Table B Feyijinmi's Business Expenses[5]**

| Nature of Expense | Cost | Time Period Paid | Cost Per Quarter |
|---|---|---|---|
| Liability Insurance 2020 | $67.05 | 8-13-2020 to 8-13-2021 | $16.76 |
| Liability Insurance 2021 | $119.44 | 8-14-2021 to 8-14-2022 | $29.86 |
| Advertising through Psychology Today | $29.95 | Monthly since June 2020 | $89.85 |
| Advertising through Adevkit | $30.00 | Monthly since June 2020 | $90 |
| Zoom for Teletherapy | $14.95 | Monthly since November 2021 | $44.85 |

**Table C Feyijinmi's Net Income Per Quarter[6]**

| Quarter | Earnings | Business Expenses | Net |
|---|---|---|---|
| Q1 2020 | $5,166.67[7] | $0 | $5,166.67 |
| Q2 2020 | $4,541.90[8] | $59.95 | $4481.95 |
| Q3 2020 | $13,744 | $126.96 | $13617.04 |
| Q4 2020 | $13,744 | $126.96 | $13617.04 |
| Q1 2021 | $12,782.50 | $126.96 | $12665.54 |
| Q2 2021 | $12,782.50 | $126.96 | $12665.54 |

[5] The information in Table B is taken from Feyijinmi decl. at ¶ 28c-d.
[6] The information in Table C is taken from Feyijinmi decl. at ¶ 28e-g.
[7] Feyijinmi was paid by AAO for the Month of January.
[8] Feyijinmi started in June at Mighty Behavioral and only had one month of earnings for Q2 2020.

| | | | |
|---|---|---|---|
| Q3 2021 | $12,782.50 | $179.39 | $12603.11 |
| Q4 2021 | $12,782.50 | $209.29 | $12573.21 |
| Q1 2022 | $7,350 | $224.24 | $7,125.76 |
| Q2 2022 | $7,350 | $224.24 | $7,125.76 |

**Table D Calculation of Feyijinmi's Backpay[9]**

| Date | Backpay | Earnings | Net | Interest |
|---|---|---|---|---|
| 01/2020 | $15,625.00 | $5,166.67 | $10,458.33 | $810.90 |
| 04/2020 | $15,625.00 | $4,481.95 | $11,143.05 | $715.75 |
| 07/2020 | $15,625.00 | $13,617.04 | $2,007.96 | $113.07 |
| 10/2020 | $15,625.00 | $13,617.04 | $2,007.96 | $97.28 |
| 01/2021 | $15,625.00 | $12,665.54 | $2,959.46 | $120.28 |
| 04/2021 | $15,625.00 | $12,665.54 | $2,959.46 | $97.35 |
| 07/2021 | $15,625.00 | $12,603.11 | $3,021.89 | $76.17 |
| 10/2021 | $15,625.00 | $12,573.21 | $3,051.79 | $53.64 |
| 01/2022 | $15,625.00 | $7,125.76 | $8,499.24 | $84.99 |
| 04/2022 | $15,625.00 | $7,125.76 | $8,499.24 | $0.00 |
| | | | **$54,608.38** | **$2,169.43** |

**Total = $56,777.81**

**$54,608.38**     **$2,169.43**

**Grand Total  =  $56,777.81**

Accordingly, as set forth in table D and detailed in the foregoing explanation of interim earnings, Feyijinmi is owed backpay and interest in the amount of $56,777.81.

---

[9] The information in Table D is the result of a calculation done through Paycalc. The full reported has been submitted as Feyijinmi decl. Exhibit N.

   b.   Strickland's Net Lost Wages and Interest

Defendant hired Strickland at $50,000 a year, which is equivalent to $12,500 a quarter and then, in violation of Title VII, demoted her to $38,000 which is equivalent to $9,500 a quarter. Strickland decl. at ¶ 29. Upon being terminated in October 2019, Strickland immediately began looking for work. *Id.* at ¶ 27. In March 2020 she found comparable employment. Her backpay is as follows:

**Table E Strickland Backpay[10]**

| Date | Backpay | Earnings | Net | Interest |
|------|---------|----------|-----|----------|
| 07/2019 | $12,500.00 | $9,500.00 | $3,000.00 | $313.93 |
| 10/2019 | $12,500.00 | $3,166.66 | $9,333.34 | $849.38 |
| 01/2020 | $12,500.00 | $1,833.00 | $10,667.00 | $827.08 |
| | | | **$23,000.34** | **$1,990.39** |
| | | | Total = **$24,990.73** | |
| | | | **$23,000.34** | **$1,990.39** |
| | | | Grand Total  =  **$24,990.73** | |

Accordingly, as set forth in Table B and detailed in the foregoing explanation of interim earnings, Strickland is owed backpay and interest in the amount of $24,990.73.

---

[10] The information in Table E is the result of a calculation done through Paycalc. The full reported has been submitted as Strickland decl. Exhibit F. The earnings for the second and third quarter 2019 represent Strickland's pay at the demoted rate of $38,000 per year including one month of pay for October 2019. The earnings for the first quarter 2020 represent the money that Strickland earned in March of that year.

2.    Compensatory Damages

Plaintiff's Complaint states a claim for compensatory damages. ECF No. 1, Prayer for
Relief at ¶ D. In an action brought under Title VII the complaining party may recover
compensatory damages. 42 U.S.C.A. § 1981a(a)(1). In this matter the Court may award up to
$50,000 in compensatory and punitive damages to each Charging Party. 42 U.S.C.
§ 1981a(b)(3)(C). Compensatory damages include *inter alia* emotional pain, suffering,
inconvenience, mental anguish and loss of enjoyment of life. 42 U.S.C.A. § 1981a(b)(3). Here,
Feyijinmi and Strickland have suffered greatly from the discriminatory and retaliatory
terminations. Additionally, the ongoing financial consequences have cause emotional suffering.

a.    Feyijinmi is Owed $50,000 in Compensatory Damages

Feyijinmi suffered severe emotional distress. The experience caused her to be mistrustful
of working for men. Feyijinmi at ¶ 26d. She had long crying spells and would lock herself in the
bathroom at home. *Id.* at ¶ 26f. These crying spells were accompanied by intrusive thoughts,
reoccurring nightmares and panic attacks. *Id*. at 26h. She began losing hair and developed a skin
issue which caused blisters on her face and neck. *Id*. at 26h. When this developed, Feyijinmi
sought therapy for emotional distress. *Id.* at 26h-i & Exhibit D. She received treatment for
"moderate-severe symptoms of Post-Traumatic Stress Disorder, General Anxiety Disorder,
and Major Depressive Disorder" which stemmed from her experience at AAO. *Id.* at Exhibit D.
The therapy has been helpful, but since being terminated she isolates at home and continues to
have symptoms of depression and to be mistrustful of male supervisors.

In addition to these emotional symptoms Feyijinmi was in danger of losing her home as a
result of the termination. *Id.* at ¶ 26e. Feyijinmi's exceptionally severe emotional distress

warrants an award of $50,000. In *MSDS Consultant Services supra* this Court awarded $50,000 in compensatory damages to a charging party who suffered from post-traumatic stress disorder as a result of the Defendant's discrimination. *Id.* at *7. Feyijinmi suffers from the same illness as a consequence of her decision to advocate for a co-worker who had condoms thrown on her desk by Dorsey.

> b.      Strickland is Owed $50,000 in Compensatory Damages

Strickland valued her job at AAO so greatly that she relocated from the Washington, DC area in an effort to save her position, yet she was terminated despite the absence  of criticisms of her performance. Strickland decl. at ¶ 21-24. She experienced anger, depression, fear and frustration from both the termination and from being pressured to date Dorsey. *Id.* at ¶ 24 & 26. She has experienced additional anxiety due to the financial consequences of the termination. *Id.* at ¶ 25. This additional anxiety interfered with her sleep. *Id.* While Strickland has been able to find replacement employment she has not recovered from the financial impact of termination. *Id.* at ¶ 31. She has debts that remain unpaid from the time that Dorsey's actions deprived her of an income. *Id.* An award of $50,000 is appropriate under these circumstances.

A plaintiff's testimony, standing alone, can support an award of compensatory damages for emotional distress. *Bryant v. Aiken Reg'l Med. Centers Inc.*, 333 F.3d 536, 546–47 (4th Cir. 2003) (citing *Price v. City of Charlotte,* 93 F.3d 1241, 1251 (4th Cir. 1996)). Compensatory damages can be established by the aggrieved party's testimony alone. *Van Rossum v. Baltimore Cty., Maryland*, No. GJH-14-0115, 2017 WL 4023342, at *4 (D. Md. Sept. 11, 2017) (awarding $250,000 in compensatory damages for depression without medical testimony). In 2017 EEOC obtained a $150,000 compensatory damages verdict in a religious accommodation case where the emotional distress was comparable to Strickland's. The verdict was based solely on the

testimony of the charging party and his wife, that he suffered emotional strain, depression and a loss of relationships with former co-workers, regarding the denial of his religious accommodation and constructive discharge. . *EEOC v. Consol Energy, Inc.*, 860 F.3d 131, 147 N. 6 (4th Cir. 2017), *cert. denied sub nom. CONSOL Energy Inc. v. EEOC*, 138 S. Ct. 976, 200 L. Ed. 2d 246 (2018). Strickland's suffering is comparable,  as she experienced the humiliation and intimidation of being pressured to go on a date, demotion, termination and the ensuing financial consequences. $50,000 is a reasonable award.

3.    Punitive Damages

Plaintiff's Complaint states a claim for punitive damages. ECF No. 1, Prayer for Relief at ¶ E. In this matter the Court may award up to $50,000 in punitive damages to each claimant. 42 U.S.C. § 1981a(b)(3)(C). "A complaining party may recover punitive damages under [Title VII] against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C.A. § 1981a(b)(2). The Court may award punitive damages when the evidence is sufficient to make four findings:

(1) That the employer's decision maker discriminated in the face of a perceived risk that the decision would violate federal law;

(2) That the decision maker was a principal or served the employer in a managerial capacity;

(3) That the decision maker acted within the scope of his employment in making the challenged decision; and

(4) That the employer failed to engage in good-faith efforts to comply with the law.

*EEOC v. Fed. Express Corp.*, 513 F.3d 360, 372 (4th Cir. 2008). As discussed below, EEOC has established the first three elements; Defendant's failure to appear and argue its alleged good faith precludes such a finding in its favor.

EEOC is not required to show egregious or outrageous discrimination, but rather proof that AAO engaged in discrimination or retaliation "in the face of a perceived risk that its actions will violate federal law." *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 534-36 (1999). Evidence that Dorsey had even a rudimentary knowledge of the import of a federal anti-discrimination statute is sufficient. *Fed. Express supra* at 372; *Anderson v. G.D.C., Inc.*, 281 F.3d 452, 460 (4th Cir. 2002). Thus, for example, the Fourth Circuit has held that an employer's decision-maker had perceived a risk of violating Title VII where the manager had merely seen an EEOC poster warning against sexual harassment, even though the manager denied having read the poster. *See Anderson*, 281 F.3d at 460.

Here, for the first element, AAO has a sexual harassment policy. Swan decl. at Exhibit B. During the investigation Dorsey told EEOC that he was responsible for AAO's employment policies. *Id.* at Exhibit A. Further, Dorsey falsely told EEOC that he did not ask Strickland on a date. *compare* Swan decl. at Exhibit A; Strickland decl. at Exhibit B. This falsehood indicates that Dorsey is aware that pressuring an employee for sex can be a violation of the law.

For the second element, to qualify as having managerial capacity, an employee "must be important but perhaps need not be the employer's top management, officers or directors." *Kolstad*, 527 U.S. at 543. Authority to hire or fire is sufficient. *See Anderson*, 281 F.3d at 461; *see, also, Lowery v. Cir. City Stores, Inc.*, 206 F.3d 431, 444 (4th Cir. 2000) (concluding that supervisor with hiring authority was a managerial employee). Action is within the scope of employment if it is "the kind [the employee] is employed to perform, occurs substantially

23

within the authorized time and space limits, and is actuated, at least in part, by a purpose to serve the employer." *Kolstad*, 527 U.S. at 544 (quoting Restatement (Second) of Agency (1957), § 228(1), at 504) (internal quotation marks omitted); *Lowery*, 206 F.3d at 444. Dorsey, the company's alter ego, clearly has the power to hire and fire employees. His actions were within the scope of his employment because he was using his power within the workplace to accomplish the harassment. An award of punitive damages in the amount of the full statutory limit to Strickland and Feyijinmi is warranted. Dorsey used the business he created as a vehicle to pressure women for sex and when women opposed him, he damaged their careers. EEOC therefore requests that they each be awarded $50,000 in punitive damages.

  4. <u>Post-Judgment Interest</u>

   Finally, Feyijinmi and Strickland also should be awarded post-judgment interest for any award of monetary damages entered by the Court. By statute, "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a); *see, also*, *EEOC v. CDG Mgmt., LLC*, No. CIV.A. RDB-08-2562, 2010 WL 4904440, at *7 (D. Md. Nov. 24, 2010).

## V. CONCLUSION

   For all of the foregoing reasons, EEOC respectfully requests that the Court enter an Order granting the relief described above.

       Respectfully submitted,

       <u>/s/ Eric S. Thompson</u>
       ERIC S. THOMPSON
       Senior Trial Attorney, U.S. EEOC
       Baltimore Field Office
       George H. Fallon Federal Building
       31 Hopkins Plaza, Suite 1432

Baltimore, MD 21201
Phone: 410.801.6696
Eric.Thompson@EEOC.GOV

**CERTIFICATE OF SERVICE**

I certify that on April 22, 2022, I served the foregoing on Defendant through the

Maryland State Department of Taxation.

Respectfully submitted,

/s/ Eric S. Thompson
ERIC S. THOMPSON
Senior Trial Attorney, U.S. EEOC

25